UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

Present: The Honorable Stephanie S. Christensen, U.S. Magistrate Judge

| Teagan Snyder | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) **Order DENYING Petitioner's *Ex Parte* Application for Temporary Restraining Order (ECF 4)**

An Israeli citizen who overstayed his visa has filed a petition for habeas corpus accompanied by an *ex parte* application for a temporary restraining order seeking his immediate release from immigration custody. Because Petitioner fails to show a likelihood of success on the merits, the Court DENIES Petitioner's temporary restraining order application.

**I**

Liran Zorella is an Israeli citizen who entered the United States approximately 15 years ago on a visa; he is currently detained pending removal proceedings. (ECF 1 at 1, 6.) He has filed a counseled petition for writ of habeas corpus by person in federal custody pursuant to 28 U.S.C. § 2241, seeking release from detention. (*Id.* at 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

The petition alleges the following facts. Petitioner entered the United States on a nonimmigrant visa and has resided in the country since. (*Id.* at 5, 7; ECF 13-1 at 4.) In 2013, Petitioner's status was adjusted to lawful permanent resident on a conditional basis based on his marriage to a U.S. citizen. (ECF 1 at 5.) His marriage later ended in divorce, and his application to remove the conditional basis of his lawful permanent residency was denied. (*Id.*) His removal proceedings were dismissed in 2024 for him to refile his application to remove the conditional basis, which he did. (*Id.*) Removal proceedings were again initiated in April 2026.[1] (*Id.*)

Though the petition references an unspecified pending criminal charge (*id.*), Respondents provide that Petitioner was arrested by state authorities on October 28, 2026, and charged with grand theft in violation of the California Penal Code section 487(A). (ECF 13 at 2.) On October 28, 2026, the court ordered him released on his own recognizance and ordered him to complete a booking and release process, which he did. (ECF 1 at 5.) On the same day, Petitioner was detained by immigration authorities. (*Id.*) He was transferred to Adelanto, California, the next day. (*Id.*)

Petitioner alleges that his due process rights were violated when he was detained without pre-deprivation notice and hearing, and without an initial custody determination as required by 8 C.F.R. § 236.1(c)(8) and § 287.3(d). (*Id.* at 2–3, 6–11.) He further alleges a

---

[1] Petitioner alleges that his form I-751 remains pending (ECF 1 at 5) but Respondents' response and the I-213 attached thereto indicate that Petitioner's applications for asylum and to remove conditions on his residence were both denied by USCIS on April 10, 2026 (ECF 13 at 2; ECF 13-1 at 4).

warrantless arrest in violation of 8 U.S.C. § 1357(a)(2), and an injunction imposed in a separate lawsuit. (*Id.*) Petitioner seeks release. (*Id.* at 11.)

Along with the petition, Petitioner filed an *ex parte* application for a temporary restraining order (TRO). (ECF 4.) He asserts that he is likely to succeed on the merits of his claims and that he will suffer irreparable harm if not released as "complications from a recent surgery require intensive and urgent medical care, which he cannot receive in ICE custody." (*Id.* at 4.) That "intensive care" seems to include antibiotics, pain medication, a compression garment, and wound care (though all drains have been removed). (*Id.* at 4.) As proof that ICE is unable to provide this care, Petitioner alleges that his medications were dropped at the detention facility but he was not permitted to take them. (*Id.* at 5.)

The treatment results from a circumferential lipectomy—a cosmetic procedure also referenced as a "liposuction" in Petitioner's briefing, to remove excess tissue—and a post-surgical infection that has returned him to the surgeon's office twice including as recently as October 19, 2026, ten days before his detention. (*Id.* at 5; ECF 4-1 at 8.) His cosmetic surgeon has stated, in sum, that Petitioner's wounds must be monitored for further infection and that his healing should be monitored. (ECF 4 at 15.) From these facts, Petitioner posits that his "health and life are at risk" while detained. (*Id.* at 14.)

Petitioner provided Respondents notice of his intent to file the TRO and served the TRO on Respondents through their counsel. (ECF 4 at 18; ECF 4-1 at 2.) The Court ordered Respondents to response to the TRO application (ECF 8), which they did (ECF 13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

Respondents assert that Petitioner has not shown likelihood of success on the merits, and further that Petitioner's operation does not place Petitioner in an exceptional category of medical care, and that the type of post-operative care he needs is within the capacity of the immigration detention center. (ECF 13 at 4.) Petitioner replied. (ECF 14.)

**II**

Rule 65(b) of the Federal Rules of Civil Procedure governs temporary restraining orders. A TRO is "an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City.*, 415 U.S. 423, 439 (1974). To obtain a TRO, a petitioner must establish the four so-called *Winter* factors, including that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Id.* (citation modified). Conversely, and where a constitutional violation is alleged, "[i]f a plaintiff . . . shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation . . . [and] also tips the public interest sharply in his favor because it is always in the public interest to prevent the violation

of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

Because a TRO is a kind of *ex parte* application, the moving party "must establish why the accompanying proposed motion for the ultimate relief cannot be calendared in the usual manner." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (explaining that an applicant for *ex parte* relief must demonstrate urgency and that it is without fault in creating the urgency).

**III**

Petitioner has not shown likelihood of success on any of his three claims.

**A**

Petitioner argues that the Due Process Clause required that he have a pre-deprivation hearing before he was detained. (ECF 4 at 6–10.)

**1**

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment applies to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process is governed by a two-step analysis." *Hewitt v. Grabicki*, 794 F.2d 1373, 1380 (9th Cir. 1986). A court must first determine whether a liberty or property interest exists, and, if so, then it must determine what process is due. *Id.*

To determine whether the government has provided sufficient procedural due process to deprive an individual of life, liberty, or property, courts apply the three-factor *Mathews* test considering: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[2] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**2**

Petitioner alleges that his protected liberty interest comes from "the government's decision to leave him at liberty after his entry on a non-immigrant visa while he pursued lawful immigration status over a period of 15 years" during which he "developed ties to his community[,]" had "two U.S. citizen children and a third one to be born[,]" and has been "required to provide Respondents with his address and contact information." (ECF 4 at 7, 9.) The Court disagrees.

Some courts have found that noncitizens who have been released on parole have a liberty interest in remaining at liberty. *E.g., Kamel v. Santacruz*, No. 5:26-cv-03481-BFM, 2026 WL 1965112, at *2 (C.D. Cal. July 2, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Those cases rely on the notion that a parolee "relies on at least an implicit promise that parole will be revoked only if she fails to live up to

[2] The Ninth Circuit has "assume[d] without deciding" that *Mathews* applies in the immigration detention context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-06437-SSC | Date: | November 4, 2026 |
| Title | Liran Zorella v. Markwayne Mullin, et al. | | |

the parole conditions." *Id.* (citation modified). Petitioner cites similar authority in support of his claim, but this analogy fails because Petitioner was not previously released on parole. (ECF 4 at 6 (citing *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1146, 1152 (E.D. Cal. 2025) (finding that petitioner obtained a liberty interest in his continued release when petitioner was previously released on his own recognizance and re-detained after four years), *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *3 (E.D. Cal. July 14, 2025) (finding that petitioner obtained a liberty interest in his continued release when he was previously released on bond and then re-detained without a hearing), *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2025) (finding a liberty interest where petitioner was previously detained and released by ICE)).)

Petitioner also cites decisions finding a conditional liberty interest where the government's knowledge of an individual's presence and decision not to detain them gives rise to an inference that an asylum applicant is not a flight risk or danger to the community. *See, e.g.*, *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026).

The Court is not persuaded to apply such reasoning in this case. As one court explained, such reasoning "read[s] intentionality into what used to be, in the Court's understanding, a deliberate separation between the mechanisms that enforced our immigration law and those that adjudicate requests for humanitarian relief, and is now something closer to bureaucratic neglect." *Wang v. Janecha*, No. 5:26-cv-4447-BFM, 2026 WL 2584800, at *2 (C.D. Cal. Aug. 31, 2026).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

Regardless, the facts giving rise to such an inference are not before the Court in this case. Here, Petitioner's status was adjusted to lawful permanent residency on a conditional basis based on his marriage to a U.S. citizen, but the marriage later ended in divorce and his application to remove the conditional basis of his lawful permanent residency was denied. (ECF 4 at 4.) His removal proceedings in 2022 were dismissed so that he could refile his application to remove the conditional basis, which he did. (*Id.*) On April 10, 2026, Petitioner was provided a notice to appear for removal proceedings to occur on May 11, 2026, as removal proceedings were again initiated. (ECF 4-1 at 13; ECF 13-1 at 4.) After those removal proceedings began, Petitioner was arrested and charged with grand theft in violation of California Penal Code 487(A). (ECF 4 at 5; ECF 13 at 2.) As Respondents argue, this constitutes changed circumstances.

Here, the Court finds that Petitioner, having overstayed his nonimmigrant visa does not have a conditional liberty interest protected by the Due Process Clause. *See, e.g., Melkumyan v. Semaia*, No. 5:26-cv-03019-MBK, 2026 WL 1772761, at *2 (C.D. Cal. June 16, 2026) (denying procedural due process claim of individual who overstayed his visa); *Herrera v. Blanche*, No. C26-1684-MLP, 2026 WL 1733493, at *2 (W.D. Wash. June 16, 2026); *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-cv-00725-RBM-VET, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) (finding that although an individual admitted on a B-2 visa "has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole").

Further, the law entitles him to a significant amount of process in connection with his detention including arrest with a warrant, a prompt custody decision, and the right to seek a custody redetermination before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

an immigration judge and to appeal the immigration judge's decision, if necessary. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(a)–(b); *see also* *Rodriguez Diaz*, 53 F.4th at 1197.[3] The record indicates that Petitioner received such process. As the Court discusses below, Petitioner was arrested pursuant to a warrant. (ECF 13 at 2; ECF 13-1 at 3; ECF 13-2.) And, as Respondents note, Petitioner is entitled to request and receive a custody redetermination hearing. (ECF 7 at 4–5.)

Petitioner has not shown a likelihood of success on his procedural due process claim nor raised serious questions going to the merits.

**B**

Petitioner also argues that he was arrested without a warrant in violation of 8 U.S.C. § 1357(a)(2) and an injunction imposed in *Vazquez Perdomo v. Mullin*, No. 2:25-cv-05606-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sep. 2, 2026). (ECF 4 at 10–13.)

In *Vazquez*, the court issued a preliminary injunction requiring defendants, in cases where they "proceed to make a warrantless civil

[3] Petitioner argues that *Rodriguez Vazquez* does not apply in this case because Petitioner was admitted as a nonimmigrant visitor and is not present without admission. (ECF 15 at 6 n.3.) But the case also addressed visa overstays stating that "[b]ecause § 1226 is not limited to [noncitizens] deemed 'applicants for admission,' the [noncitizens] subject to § 1226 include other [noncitizens], such as admitted [noncitizens] 'who overstay or violate the terms of their visas' or who 'engage in conduct that renders them removable.'" *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026)).

immigration arrest in this District," to "document, as soon as practicable, the facts and circumstances surrounding the civil immigration arrest in narrative form," including "[t]he specific, particularized facts that supported the agent's or officer's prearrest probable cause to believe the person was likely to escape before an arrest could be obtained." 2026 WL 2751388, at *31.

Petitioner has not met his burden to show unlawful detention based on a warrantless arrest. Contrary to Petitioner's contention, Respondents provide a copy of the warrant authorizing Petitioner's arrest. (ECF 13-2.) The warrant indicates that it was "served on location[.]" (*Id.* at 3.) The I-213 states that the Deportation Officers conducted a "targeted enforcement operation to locate and arrest" Petitioner and that they "informed [Petitioner] they had a warrant for his arrest[.]" (ECF 13-1 at 3.) Petitioner was served a form I-862 Notice to Appear on April 10, 2026. (*Id.* at 4–5.)

It is Petitioner's burden to show unlawful detention, and here he has not shown the absence of an arrest warrant. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (in "federal habeas proceedings, it is the petitioner who bears the burden of proving his case"); *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) ("The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come forward with enough negative factors to persuade the court not to admit it."); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true[.]").

Petitioner has not shown a likelihood of success on his warrantless arrest claim nor raised serious questions going to the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

**C**

Petitioner also asserts that Respondents failed to make an initial custody determination in violation of 8 C.F.R. § 236.1(c)(8) and § 287.3(d). (ECF 4 at 13–14.)

Pursuant to 8 C.F.R. § 287.3(d), "a determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which a case determination will be made within an additional reasonable period of time, whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued."

Petitioner has not met his burden to show that he was arrested without an initial custody determination in violation of the regulations. The petition is not verified and provides no basis for personally knowing that the officers did not conduct an initial custody determination. *See Runnels v. Rosendale*, 499 F.2d 733, 734–35, 734 n.1 (1974) (allegations of a verified complaint could be taken as true for evidentiary purposes where they reflect matters within the personal knowledge of the plaintiff).

Petitioner alleges only that "[u]pon information and belief, DHS failed to make the initial custody determination required by the regulations[,]" and that a form I-286 Notice of Custody Determination is to be completed in compliance with the regulations. (ECF 1 at 10.) But Respondents provide that Petitioner was "arrested and detained by ICE via a targeted operation conducted on October 28, 2026," the same day

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-06437-SSC Date: November 4, 2026

Title Liran Zorella v. Markwayne Mullin, et al.

Petitioner was released from state criminal custody.[4] (ECF 13 at 3.) They explain that his arrest and pending charge of grand theft in violation of the California Penal Code section 487(A) was "relevant to public danger[.]" (*Id.*)

Petitioner has not shown a likelihood of success on this claim or raised serious questions going to the merits.

**IV**

For the reasons stated above, Petitioner has not shown a likelihood of success on the merits of his Fifth Amendment claims and generally has not demonstrated entitlement to release. *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up) ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors.").[5]

---

[4] The I-213 indicates that Petitioner was processed as a "custody re-determination[.]" (ECF 13-1 at 5). But there is no indication that Petitioner had an initial custody determination prior to his arrest on October 28, 2026. Respondents allege that Petitioner's arrest and charge by state criminal authorities was a "change in circumstance relevant to public danger that violated the terms of [Petitioner's] release on recognizance and permitted his redetection" (ECF 13 at 3), but Respondents seem to refer to Petitioner's release on recognizance from state custody and not immigration detention (ECF 1 at 5).

[5] Petitioner has also failed to show that he is likely to suffer irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods,* 415 U.S. 423, 439 (1974); *see also Reno Air Racing*

Accordingly, Petitioner's *ex parte* application for a TRO (ECF 4) is DENIED.

**In their answer to the petition, Respondents are ordered to submit a copy of the I-286 Initial Custody Determination or any other document indicating that they conducted an initial custody determination upon Petitioner's arrest.**

**IT IS SO ORDERED.**

:

Initials of Preparer **ts**

---

*Ass'n v. McCord,* 452 F.3d 1126, 1130–31 (9th Cir. 2006). Petitioner had "circumferential lipectomy surgery" on October 1, 2026, more than a month ago. (ECF 4 at 5.) Though he developed an infection and had to return to the surgeon's office on October 5, 2026 and October 19, 2026, his surgical drains have now been removed. (*Id.*) And although he visited the emergency room due to pain and a high fever caused by a post-surgical infection, he had since been taking antibiotics and pain medications and does not allege that he is currently suffering from an infection. (*Id.*) *See Caribbean Marine Services Co., v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (irreparable harm cannot be speculative). Respondents note that "the type of post-operative wound care identified" in the letter submitted by Petitioner's plastic surgeon is "well within the capacity of the Adelanto facility[,] which routinely houses and provides medical care to detainees with far more serious conditions." (ECF 13 at 4.) Petitioner has thus not shown that he is likely to suffer irreparable harm.